**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| _____ | : | |
| CORRINE CERVASIO MICKLOS, | : | |
| | : | Civil Action No. 3:18-cv-14781-BRM-TJB |
| Plaintiff, | : | |
| v. | : | |
| | : | **OPINION** |
| CERTIFY GLOBAL, INC., MARC | : | |
| POTASH, ABC CORPS 1-10, and JOHN | : | |
| DOES 1-10, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants Certify Global, Inc. ("Certify Global") and Marc Potash's ("Potash") (collectively, "Defendants") Motion to Dismiss or in the Alternative to Stay the matter. (ECF No. 4.) Corrine Cervasio Micklos ("Micklos") opposes the Motion. (ECF No. 5.) Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b)[1], for the reasons set forth below and for good cause having been shown, Defendants' Motion to Dismiss is **GRANTED**.

---

[1] This matter was scheduled for oral argument on March 25, 2017. In lieu of an argument, however, the Court conducted a settlement conference in attempt to resolve this matter and the related matter pending in Maryland and stayed the case pending a status telephone conference. On April 24, 2019, the Court held the status conference, however, the parties were unable to resolve this matter. The Court advised counsel the Motion would be decided on the papers.

# I. BACKGROUND

## A. Factual Background

This action allegedly arises out of Micklos's employment with Certify Global. Certify Global is incorporated and conducts business in Maryland. (ECF No. 1-1 ¶ 1.) Potash, a Maryland resident, was at all relevant times the CEO and founder of Certify Global. (*Id.* ¶ 2.) On July 7, 2016, Micklos received an offer of employment from Certify Global, signed by Potash, to serve as its Vice President of Business Development in Healthcare. (ECF No. 4-6.) The offer described Micklos's compensation, which was divided into three categories: annual base compensation, annual commission compensation, and equity compensation. (*Id.*) The annual commission compensation plan was to "commensurate with [her] performance and [was] based on an annual goal of $1,500,000 of new and repeat business." (*Id.*) The commission schedule was as follows:

> 10% Commission on your first $500,000 annual new and repeat revenue
> 15% Commission on all revenue once $500,001 of annual new and repeat revenue has been reached[1]
> 20% Commission on all revenue once $1,000,001 of annual new and repeat revenue has been reached[1][sic]
>
> _____
> [1] This commission tier is retroactive and you will receive that % commission on all dollars received for that year. For example, when you cross the $1mm threshold you will be at the 20% tier you will be earn [sic] 20% x $1,500,000 or $300,000 in commission plus your base of $125,000 for a total of $425,000.
>
> [2] This commission will stay in place for at least two years (through Dec 2018) unless parties mutually agree otherwise.

(*Id.*) The equity compensation plan was to "commensurate with [her] performance that [would] be earned in with an immediate vesting in the event Certify [Global] [was] acquired." (*Id.*)

Upon accepting the offer, the parties executed an Employment Agreement on July 28, 2016. (ECF No. 4-7.) The Employment Agreement contained a "Governing Law; Forum; and Service" clause:

> This Agreement will be construed as a contract under the laws of the State of Maryland without regard to conflict of law rules and principles. Any litigation or other proceedings with respect to any controversy, claim, or dispute arising from or relating to this Agreement will be brought in state court in Montgomery Country, Maryland, expect that any litigation or other proceedings arising from or relating to the Company's intellectual property may be brought in federal court in the District of Maryland or the Eastern District of Virginia.

(*Id.* at 5.)[2]

"Shortly after hiring" Micklos, Potash "limited direct communication with [her] after being informed of her pregnancy." (ECF No. 1-1 ¶ 4.) Potash eventually ceased all communication with Micklos. (*Id.* ¶ 5.) At some point, Micklos "expressed a need for short term disability due to her pregnancy," however, Defendants ignored her request. (*Id.* ¶ 6.) Therefore, Micklos was forced to work up until seven hours before giving birth on February 14, 2017. (*Id.* ¶ 7.) Micklos also returned to work several days after giving birth. (*Id.* ¶ 8.) On February 27, 2017, Micklos "was forced to travel to Washington DC to lead a prospect meeting despite medical advice to refrain from working six weeks post-partum." (*Id.* ¶ 9.)

---

[2] While Micklos's Complaint does not attach the offer letter and Employment Agreement, it refers to them. Therefore, this Court may consider them without converting this Motion to a motion for summary judgement. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (stating a "court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

On April 21, 2017, after leading a six-month sales process, Micklos contends she executed the sale of Certify Global software to Atlantic Care. (*Id.* ¶ 14.) She was never paid commission for that sale or future add-on sales commissions. (*Id.* ¶¶ 14, 16.) In June of 2017, Micklos resigned from her position at Certify Global. (ECF No. 5 at 5.)

On August 31, 2018, Certify Global filed a Complaint for Declaratory Relief in the Circuit Court for Montgomery County, Maryland. (ECF No. 4-8.) Certify Global asked for a declaration that Maryland law governs and applies to the Employment Agreement between the parties. (*Id.*) That matter is still pending. Nevertheless, on September 5, 2018, Micklos filed this matter in the Superior Court of New Jersey, alleging: (1) breach of contract; (2) pregnancy discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD"); and (3) failure to accommodate in violation of the NJLAD. (ECF No. 1-1.) The matter was removed to this court on October 9, 2018. (ECF No. 1.) On October 16, 2018, Defendants filed a Motion to Dismiss alleging this matter should be dismissed because Maryland and not New Jersey is the proper forum pursuant to the Employment Agreement and that Micklos has failed to properly plead her claims pursuant to Rule 12(b)(6). (*See* ECF No. 4-4.) In the alternative, Defendants request this Court stay this matter pending the judgment from the Circuit Court of Montgomery County, Maryland. (*Id.* at 20-22.) Micklos opposes the Motion. (ECF No. 5.)

## II. DECISION

Defendants argue Maryland is the most appropriate forum under the doctrine of *forum non conveniens* because Defendants can be found in Maryland, most witnesses (except Micklos) are in Maryland, all of the alleged acts occurred in Maryland, New Jersey residents do not have an interest in a dispute between a Maryland-based employer and employee when the underlying circumstances were based in Maryland, and Maryland law would govern the dispute. (ECF No.

4-4 at 9-11.) Micklos argues New Jersey is the proper forum because she is a New Jersey resident and worked for Defendants in New Jersey. (ECF No. 5 at 8-9.) The Court agrees with Defendants and finds this matter should be dismissed and refiled in the appropriate court in Maryland.[3]

Pursuant to the doctrine of *forum non conveniens*, a court has the discretion to dismiss a case if "a court abroad is the more appropriate and convenient forum for adjudicating the controversy." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). Such a decision rests in the sound discretion of the trial court. *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 188–89 (3d Cir.2008). "Dismissal for *forum non conveniens* reflects a court's assessment of a 'range of considerations, most notable the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality.'" *Sinochem Int'l Co.*, 549 U.S. at 429 (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 723 (1996)). "The analysis under a motion to dismiss for forum non conveniens is flexible and must be made on the unique facts of each case." *Mediterranean Golf Inc. v. Hirsh*, 783 F. Supp. 835, 840 (D.N.J. 1991) (citation omitted).

> Although a plaintiff's choice of forum should rarely be disturbed, [w]hen an alternative forum has jurisdiction to hear the case, and when trial in the plaintiff's chosen forum would establish . . . oppressiveness and vexation to the defendant . . . out of all proportion to plaintiff's convenience, or when the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems, the court may, in the exercise of its sound discretion, dismiss the case.

*Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013) (citing *Windt*, 529 F.3d at 189).

---

[3] Because this matter is dismissed pursuant to the doctrine of *forum non conveniens*, Defendants alternative motions to dismiss for failure to state a claim and to stay the matter are **MOOT**.

"The Third Circuit applies a three-part analysis in determining if dismissal based on the doctrine of forum non conveniens is appropriate." *Warner Tech. & Inv. Corp. v. Hou*, No. 13-7415, 2014 WL 7409978, at *3 (D.N.J. Dec. 31, 2014). First, the Court must "determine whether an adequate alternative forum can entertain the case." *Id.* (quoting *Windt*, 529 F.3d at 189–90). Second, "[i]f such a forum exists, the district court must then determine the appropriate amount of deference to be given the plaintiff's choice of forum." *Id.* (quoting *Windt*, 529 F.3d at 190). Third, "[o]nce the district court has determined the amount of deference due the plaintiff's choice of forum, the district court must balance the relevant public and private interest factors." *Id.* (quoting *Windt*, 529 F.3d at 190). "If the balance of these factors indicates that trial in the chosen forum would result in oppression or vexation to the defendant out of all proportion to the plaintiff's convenience, the district court may, in its discretion, dismiss the case on forum non conveniens grounds." *Id.* (quoting *Windt*, 529 F.3d at 190).

The party moving to dismiss on ground of *forum non conveniens* "bears the burden of persuasion" as to all three elements. *Lony v. E.I. Du Point De Nemours Co.*, 886 F.2d 628, 632 (3d Cir. 1989) (citation omitted). Thereafter, the plaintiff can rebut the evidence. *Warner Tech. & Inv. Corp.*, 2014 WL 7409978, at *3.

The Court must first determine whether an adequate alternative forum exists. "A party to the lawsuit can satisfy this element of the forum non conveniens analysis 'when the defendant is amenable to process' in the alternative forum." *Suhail v. Trans-Americainvest (St. Kitts), Ltd.*, No. 14-7386, 2015 WL 4598809, at *3 (D.N.J. July 29, 2015) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981)). Here, an adequate alternative forum exists. Foremost, there is no dispute among the parties regarding the adequacy of Maryland as an alternative forum. Nevertheless, Certify Global and Potash are undeniably amendable to process in Maryland. Certify

Global is a Maryland corporation conducting business in Maryland, with its principal place of business in Maryland and Potash is a Maryland resident. (ECF No. 1-1 ¶¶ 1-2.) Moreover, any Maryland court is clearly capable of resolving these disputes. Accordingly, the Court finds Defendants have met their burden, and Maryland is an adequate alternative forum to resolve the parties' disputes.

Next, because an adequate alternative forum exists, the Court must determine the appropriate amount of deference to be given to Micklos's choice of forum. *Windt*, 529 F.3d at 189–90. Generally, there is a strong presumption in favor of a plaintiff's chosen forum. *Lony*, 886 F.2d at 633. This presumption may be overcome, however, "when the balance of the public and private interests 'clearly' favor[] an alternate forum." *Archut v. Ross Univ. Sch. of Veterinary Med.*, No. 10-1681, 2013 WL 5913675, at *7 (D.N.J. Oct. 31, 2013). "Citizens or residents deserve somewhat more deference than foreign plaintiffs, but dismissal should not be automatically barred when a plaintiff has brought an action in the plaintiff's home forum." *Id.* Especially, "if the operative facts giving rise to the complaint occurred outside of the chosen forum, then deference owed to a plaintiff's choice of forum is reduced." *Id.*

The Court acknowledges that Micklos is entitled to some deference since it chose New Jersey as its forum and because she is a New Jersey resident. However, the Court declines to award full deference to her choice of forum since most of the facts giving rise to the Complaint occurred in Maryland. Although Micklos worked for Defendants in New Jersey, she entered into an employment contract executed in Maryland and governed by the laws of Maryland. The Employment Agreement contained a "Governing Law; Forum; and Service" clause:

> This Agreement will be construed as a contract under the laws of the State of Maryland without regard to conflict of law rules and principles. Any litigation or other proceedings with respect to any

> controversy, claim, or dispute arising from or relating to this Agreement will be brought in state court in Montgomery Country, Maryland, expect that any litigation or other proceedings arising from or relating to the Company's intellectual property may be brought in federal court in the District of Maryland or the Eastern District of Virginia.

(ECF No. 4-7 at 5.) Micklos also often traveled to Maryland to conduct business on behalf of Defendants. (ECF No. 5 at 4.) Accordingly, Micklos's choice of forum is entitled to a diminished level of deference. *See Lynch v. Hilton Worldwide, Inc.*, No. 11-1362, 2011 WL 5240730, at *3 (D.N.J. Oct. 31, 2011) (holding that deference to plaintiffs' choice to bring action in home forum is "somewhat diminished since the operative facts giving rise to the action occurred outside of New Jersey").

Lastly, although Micklos's choice of forum is accorded diminished deference, Defendants must still demonstrate the private and public factors weigh in their favor. The public interest factors include:

> (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (4) the unfairness of burdening citizens in an unrelated forum with jury duty.

*Archut*, 2013 WL 5913675, at *7. Neither party proffers any arguments regarding the first factor. Therefore, factor number one is neutral. The Court also finds factor two to be neutral. While Micklos technically worked in New Jersey, the agreement governing the disputes at issue was executed in Maryland and Micklos was employed by a Maryland corporation. As such, both forums would have an interest in having the issues decided in Maryland.

Factor three, the avoidance of unnecessary problems in conflicts of laws, weighs in favor of dismissal and having the matter reopened in Maryland. "The district court is not required to

determine which law the foreign court would apply." *Id.* at *11. "The doctrine of forum non conveniens . . . is designed in part to help courts avoid conducting complex exercises in comparative law." *Piper Aircraft Co.*, 454 U.S. at 251. However, the Court must "consider the impact of choice-of-law problems on the forum, particularly since the need to apply foreign law points toward dismissal." *Archut*, 2013 WL 5913675, at *11 (citation omitted). In conducting a choice of law determination in a breach of contract case, "the forum that has the most significant relationship with the parties and the contract is paramount." *Id.* Although the Court need not rule conclusively on the issue of which substantive law will apply to this case, the "Governing Law; Forum; and Service" clause, is enough to persuade the Court that there is a strong likelihood that Maryland law will govern the dispute. (ECF No. 4-7 at 5.) "This Court, if retaining jurisdiction, will be burdened by the necessity of undertaking a time-consuming choice of-law analysis to determine the propriety of applying [Maryland] law." *Archut*, 2013 WL 5913675, at *11. As such, this factor weighs heavily in favor of dismissal.

The last public interest factor, the unfairness of burdening citizens in an unrelated forum with jury duty, also weighs in favor of dismissal. "The burden of jury duty should be placed on those having the closest ties to the action." *Id.* at *12 (citation omitted). Maryland has the closest ties to this action, since Certify Global is a Maryland corporation and the contract at issue was executed in and is likely governed by Maryland law. Accordingly, the balance of public interest tips in favor of Maryland.

Next, the Court examines the relevant private interest factors. These factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; and (4) practical considerations that make trial of a case easy, expeditious, and inexpensive." *Id.*

As to the relative ease of access to sources of proof, the Court finds "that the availability of documentary evidence particularly in light of modern technological advancements, is at equipoise." *Id.* (citation omitted). Nevertheless, the parties' primary dispute regarding the sources of proof is the location of the relevant witnesses. Defendants argue the key witnesses, other than Micklos, will be found in Maryland. Although Micklos is located in New Jersey, the individuals who may testify about the alleged breach of contract and violation of NJLAD would likely be located in Maryland. As such, the ease of access to witnesses weighs strongly in favor of dismissal.

The Court must also examine the availability of a compulsory process for attendance of unwilling witnesses. Neither party addresses this factor. Therefore, the Court finds it to be neutral. Next, the costs of obtaining attendance of willing witnesses weighs in favor of dismissal because most of the essential witnesses reside in Maryland. As such, the costs of obtaining attendance of willing witness weighs strongly in favor of dismissal. Finally, the Court finds that practical considerations that make trial of a case easy, expeditious and inexpensive favor Maryland as the forum for this matter. While Micklos works in New Jersey, she made the initial decision to be employed by a Maryland corporation and has traveled to Maryland on many occasions for employment. Therefore, for all the reasons stated above, the Court finds that it would be inconvenient for Defendants to defend this case in New Jersey.

The relevant public and private interest factors weigh in favor of dismissal on the basis of *forum non conveniens*. Accordingly, this mater is **DISMISSED** and may be refiled in Maryland if appropriate.

**IV. CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss pursuant to the doctrine of *forum non conveniens* is **GRANTED** (ECF No. 4).

Date: May 28, 2019

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**